All right, you may proceed counsel. Well, good morning, your honors, and may it please the court. At Keith Wood's first trial, defense counsel spent much of his opening statement cataloging inadmissible evidence from a forensic interview and therapy sessions with a child trial. But once trial was underway, he candidly admitted that he had changed his mind about the value of that evidence to his case, so he tried to put it before the jury anyway. The trial court rightfully declared a mistrial after finding that no other viable option existed. A federal court refused to block a second trial. Wood was then retried and ultimately convicted, and the Supreme Court of Appeals of West Virginia affirmed. The district court here, however, set all that aside, finding that the state trial court should have said more and done more. But that decision fails to respect two separate and independent standards that ultimately dictate reversal here. First, under Arizona v. Washington, a trial court's mistrial determination commands special respect. And second, under EDFA, a state court's rejection of a constitutional claim is entitled to extraordinary deference. The district court here, however, applied neither standard. Instead, its second guest state courts on questions of state evidentiary law substituted its own judgment about the reading of pretrial orders and ordered Wood's immediate release. All that was error, and the court should reverse. So I think there are really two important errors that the court can identify here that track the nature of the EDFA standard. There's sort of the factual errors and the legal errors in which the district court approached this case. As to the factual errors, I think the district court did not appropriately determine that the state court rested its decision on an unreasonable factual finding. I think the EDFA standards are very important here. Of course, EDFA says that state court factual findings are presumed correct unless they are rebutted by clear and convincing evidence. And Wood must show that that determination was objectively unreasonable in light of the record. So you're saying the federal courts can't even look at this because it's really a state court determination when it comes to the evidentiary aspect of it? Exactly. When it comes to the application of state evidentiary law, exactly. That's even a higher standard because, of course, even in any case, even outside the EDFA context, this court often defers to trial courts' readings of their own orders. But particularly when it comes to the application of state law, that is a question for state courts. You would agree that it's clearly established that a trial court can't precipitately declare a mistrial just because the state gets flustered or is not ready to try the case. I mean, it seems, I understand the evidence was excluded. That's a motion in limine type thing. Counsel made an argument. I don't know why he wasn't chewed out, but that's either here or there. But the mistrial gets granted. In the record, this evidence could have come in later in the trial anyway by way of impeachment. And for the state to contend that this is going to cause a disruption to their trial strategy, I'm a little, help me out how to, if they view this evidence out there and there is a possibility that it's going to come in impeachment or some other way, why was not that decision precipitately made by the trial judge? Sure. I think there are two aspects in which this was obviously prejudicial to the state. Even if one assumes that it actually could have come in through impeachment later and obviously there are reasons why we would take issue with that characterization. But if you assume that it was going to come in later, the state didn't have the opportunity to address this in its own opening statement. Because again, they knew that these pretrial orders were out there. They knew this was inadmissible evidence. So they were suddenly in the position of this important evidence, really the defense made this the centerpiece of their case, not being addressed by the prosecution at all. And so now the jury is left with the impression that the state is purposely hiding or at least failing to confront what the defense has just told them. And you're probably right about that. But, you know, once the defense counsel opened the door, I'm assuming if the evidence was favorable to the state, they could under invited error have done the same thing in their opening statement. So there's two aspects to this, Your Honor. Obviously the state had already given its opening statement. So there's no way in which they could kind of go back and undo the fact that the jury is going to think they hid the ball in that evidence. What's done is done when it comes to that. I think another part about this is, though, this record does not suggest that this evidence was all wholly favorable to the state or wholly favorable to the defendant. And the reality is that the state should have had the opportunity to prepare its case with an eye towards that evidence if defense counsel wanted to, in fact, introduce it. But instead what defense counsel did was lead the state to believe that the evidence was not coming in. And so the state proceeded with preparing its case with that understanding. And then only at trial did suddenly we understand, now defense counsel, I think defense counsel candidly said, I got into this case and I understood that now this evidence actually favors me. And at that point, the prosecution in the midst of trial is faced with the task of pivoting their entire case strategy. Let's talk about the standard of review. You agree that under Arizona that we would be in a situation where there would be a high standard of review, but there would be a high standard of review for the state's lack of prosecution preparation? I think if that were the standard, that would be, or if that were the situation, yes, it would be a high standard. But let me make sure I'm clear about this. There are sort of several nesting layers of standards here. One, of course, is the Arizona v. Washington standard, and that's the sort of special respect for an error precipitated by defense counsel's prejudicial statements. You then have the abuse of neglect, or excuse me, the abuse of discretion standard that's applied by the state Supreme Court of Appeals. But then, of course, because we're on AEDPA review, now we're applying a reasonable application of clearly established Supreme Court precedent, and so that's sort of trickly deferential. And so I think that's really where the state takes most issue with what the district court respectfully did here. And the district court didn't, well, the magistrate judge applied the AEDPA standard, but the district court didn't. Correct. It was surprising to me that in the state's response to Mr. Wood's objections to the magistrate judge's report and recommendation, the state didn't argue AEDPA, didn't remind the district court that AEDPA applied. So if my recollection isn't failing me, I believe we did cite the AEDPA standards. If we were less pointed than we should have been about the misapplication that Wood was inviting as to AEDPA, then shame on us. But I think it certainly wasn't a forfeited issue because we did tell the district court, these are the standards that apply to an AEDPA case. And I think certainly your honors understand 2254s are some of the kind of most routine litigation that district courts confront, for better or worse. And these courts well understand that extreme standards of deference apply, particularly when you're talking about factual findings, which is part of what was engaged here. And certainly when you're talking about an unreasonable application of Supreme Court precedent. And I think it really is notable that the only Supreme Court precedent that I think we continue to hear from Mr. Wood today is Arizona v. Washington, a case where the court is stressing the standard of deference, not suggesting that these are common errors, but suggesting just the opposite. And the AEDPA standard in this context is that no fair-minded jurist would reach the conclusion that the trial court did. But here the trial court found that there was manifest necessity. The West Virginia Supreme Court found that there was manifest necessity. The magistrate judge found there was manifest necessity. So that's the layer on top of the deference pursuant to Arizona that you're pointing to. That's correct. And I would actually also slide in the decision on the 2241 before the second trial, where another magistrate judge and a district court who adopted that recommendation also said that the error was actually precipitated and the mistrial appropriately declared because of Woods' violation of the pretrial order. So I think if you're counting up, you've got five, two, one. We're in the neighborhood of eight or nine judges now who have said it was an appropriate decision. I assure you that we are aware of the 2254 situation. We've had the Supreme Court comment on that. So I'm aware of that deference issue. However, and I'm not aware that manifest necessity is different in federal law as opposed to state law. In this case, assuming there's no deference in the definition, are we bound by the West Virginia Supreme Court on this definition or application of manifest necessity here? I wouldn't say you're bound, Your Honor. But of course, your only question before you today is whether in applying that manifest necessity standard, there was an unreasonable application of it. And I think what we've contended, of course, is that there's nothing in this record that suggests an unreasonable application of clearly established Supreme Court law. And I think Renico actually is a great example of this. That was a decision in which the Supreme Court was, again, looking at these double jeopardy standards, looking at Arizona v. Washington. And the Sixth Circuit had sort of chastised the Michigan highest court for not applying a sort of threefold standard that the Sixth Circuit conceived to constitute the manifest necessity standard. And Renico said, no, shame on you. The Michigan state court applied the manifest necessity standard. Even if they didn't apply it in exactly the same way as the Sixth Circuit had said it should, that's fine. As long as you're fundamentally reasonably applying that Supreme Court precedent, even if it doesn't track one for one with the particular circuit precedent that happens to be invoked, it's still okay. You still don't have to actually reverse. I think, unfortunately, that's what the district court did here. It took the Sloan way, which of course is a federal direct appeal, and applied this court's understanding of certain double jeopardy precedents from federal cases, and effectively faulted the state court for not walking through that federal analysis. I think the Supreme Court just told us just recently that we have to be very careful about faulting a state court for failing to write more, to do a sort of bigger exposition of the relevant principles. That's Klein you're referring to? Exactly. But I think even Renico had already kind of established that before. I think it's also important that the state court is free to make its own assessments of the record before it. And as long as, again, those aren't clearly rebutted by clear and convincing evidence when it comes to the factual record, this court does owe deference to those determinations. So I think what you're seeing, Your Honors, is, again, this sort of two-part problem. There's the factual problem of its assessment of how things played out in trial. And I think another good example of that is its assessment that other alternatives weren't sufficient when the trial court did, in fact, walk through several of those alternatives before engaging with the question of a mistrial. The district court thought that there was a problem in the way that the trial court did that because those alternatives sort of weren't discussed again or discussed at length after the particular mention of a mistrial. But that's exactly the sort of deferential question, you know, the order in which alternatives have to be considered is the kind of question I think is exactly what AEDPA has in mind. You owe some degree of deference to state courts. And so you have those factual questions, but then you also have the actual legal problem. And again, we think Arizona v. Washington, as the magistrate judge actually made a good point of saying, this really tracks Arizona v. Washington in a lot of ways. And we, I You have a defense counsel standing up making prejudicial statements, statements that had sort of been expressly foreclosed even before trial started. You have the objections. You have the discussion of alternatives. You have all those same facts that the court saw in Arizona v. Washington and said, this is the sort of situation where we really have to defer to a trial court. A couple of other questions. Why did the state, and I think this is what I read in the record, why didn't the state object contemporaneously when the defense counsel went down that road rather than wait until the end of the argument and make an objection? So I think in West Virginia, as in many places, there is a practice of raising objections after opening statement. I would note that in Arizona v. Washington, that actually was the circumstances there that the objection was raised at the moment that, excuse me, at the moment that opening statement finished similarly. But again, that would be a question of state evidentiary law, state procedural law. You know, a failure to preserve an objection is sort of a classic question of state law. And I think that the trial court found it sufficient to preserve the objection and in that way appropriately engage the issue of whether some remedy was required. So in sum, your position is that we are bound by the factual findings of that state trial judge as to all the inability of the state to go forward based on lack of preparation? Well, okay. So I think there are different standards of deference for different questions. I think when it comes to how state law, for instance, the requirements for a contemporaneous objection, how state evidentiary principles apply, those sorts of questions the court has said, really, this court is not in a position to second guess. When it comes to what the actual record shows, the NEDPA gives us a standard, right? It's presumptively correct unless it's overcome by clear and convincing evidence. And it's an unreasonable finding based on a review of the record. And of course, when it comes to legal questions, then of course it's the question of contrary to or unreasonable application of clearly established Supreme Court precedent. So when it comes to whether there needed to be a contemporaneous objection, I think that falls into that first category. What is required under West Virginia law to sufficiently preserve an objection? Now, I do want to address one part of what Your Honor just said, which is a failure to prepare. I don't think that this is accurately characterized as a failure to prepare. I think that the cases that I'm familiar with where it characterizes it as a prosecutorial failure to prepare, for instance, is when there's a key prosecution witness that can't be located and the state's saying, declare a mistrial because I can't get the witness here. And I think the Supreme Court has justifiably said, well, at least try a continuance. And if a continuance doesn't work, then really it's the state's responsibility to build its own case. So a defendant can't lose the right to have one trial just because the state can't get itself together in time to actually try its own case. This again is much different than that. The state was wholly prepared to try its case based on the rulings that were made by this trial court. And it was only when defense counsel decided to pivot away from that understanding. And again, I think if you read the transcripts of some of the pretrial hearings in this case, it was everyone's understanding that it was at that moment that the state quite reasonably said, we weren't prepared to try the case as this. That sort of surprise is exactly the sort of thing that a pretrial order is meant to foreclose and exactly the sort of thing that justifies a mistrial, particularly when the prejudice is compounded by the fact that the jury is now going to be inclined to fault the prosecution for hiding the ball because they didn't actually address this in their own opening statement. Well, counsel, but what about, for example, a curative instruction or even a supplemental opening statement, which would have been untraditional. And I agree with you that we have these, as you put it, nested layers of deference. But still, why not a continuance? Why not a curative instruction? Why not a supplemental opening statement? So I'm not familiar with any moment in which a West Virginia court has entertained a supplemental opening statement. I don't hear Wood actually identifying any of those. As far as I know, does not exist, and that's probably why defense counsel didn't ask for it. A curative instruction, I think this court, and I see my time is expiring, but if I could just... You can. Thank you. As I think trial lawyers well understand, oftentimes curative instructions can compound the prejudice because they kind of hang a lantern on the problematic evidence. And I think especially so here because now you've got the trial court calling back to the jury's attention the problematic evidence without the prosecution having called that evidence out in the first instance. And again, I think that makes it look like the prosecution is trying to hide the ball in what has become, all of a sudden, the critical neck focus of this case. So the last thing I'll say... I don't hear an instruction just about in every case, an opening statement is not evidence. And of course... When you start out, if you mention something, there's no evidence been introduced in the case at all, other than the statement that you say you shouldn't have said anything about. That is correct, Your Honor. And the jury here would have been instructed as such. But I think Arizona v. Washington, among other precedents, recognizes that despite the fact that it's not evidence, that you can really poison the well by alluding to things and alluding to facts, especially when it comes to specific facts like this. I mean, this isn't just sort of a grand bit of rhetoric here. These are specific allegations about specific statements made by the key complainant. You've teed us very well on your issue here. Let's hear what the counsel on the other side, Mr. Frankovich, has to say. May it please the Court. As our nation approaches the 250th anniversary of its founding, this case presents a question that goes beyond, goes to the core of what that anniversary represents, not merely the passage of time. I always love an opening that starts like that. It's like, let's think about the world and where we are now. I think it is important because what it goes to in this particular case, it goes to the constitutional framework that our country has endured over the last 250 years. One of the most fundamental of the protections afforded by the Constitution is the Fifth Amendment, the guarantee that no person shall be twice put in jeopardy for the same offense. That guarantee reflects a simple but profound principle that the state gets one fair chance of an opportunity to convict and no more. That's as soon as that jury is in panel. You put yourself in jeopardy and that's the square issue before us today is that jury's been in panel. That's correct. You declare a mistrial and you shouldn't have done one. In your view, that's double jeopardy. That's what the district court judge held here. That's absolutely correct, Your Honor. When the defendant objects to the mistrial, it requires a manifest necessity to overcome the double jeopardy hurdle. Does it matter that it was the defendant that brought all this about? I mean, in many instances, the defendant might want there to be a mistrial. You open up with something like this and you might not want to be tried then. You might want it in some of these cases. Ultimately, I believe it does not matter that the defendant brought it. The question is still whether or not manifest necessity exists. I would also state in this case the defendant did not bring this about. I can get to that as to why he did not violate the court's order. Even if we're going to accept for the deference that he did violate the court order, you still have to get the manifest necessity. Of course, the threshold question is can we even entertain this and should we deal with the conclusions here of a state court? We're a federal court. State court has been through this and how are we restrained in terms of the law that's before us? What we can get into before we get into the thick of the weeds here? Sure. I would think if this court cannot consider it, if the district court cannot consider it, there is no such thing as a writ of habeas corpus under 2254 anymore. There is a requirement of sound... I don't mean it that broadly. You know the law on this. There is truly no such thing as the way it used to be. You know what the Supreme Court has told us. It's told us that even if we disagree with it, we would rule something totally the other way. That's not the standard. It's a much higher standard than that. The question is, is this a case that meets that level of standard that we should find that this is just so unreasonable that it's not clearly established or whatever, or that it's clearly established otherwise and the state court just didn't follow the law? Yes, the court should find that because what Arizona v. Washington requires is deference. It's not deference to the state court's ultimate ruling. It is deference to the state court's exercise of sound discretion, which the trial court in this case did not exercise. It didn't apply the test in any way. It didn't determine that there was a high degree of necessity. It did not have any careful deliberation. I mean, the entire in-chambers discussion after a mistrial was... Actually, the judge in this case is the one who offered the mistrial. He asked, after there's a discussion as to what evidence was going to come in, the judge made the correct ruling. Initially, the judge said, you shouldn't have... Well, let me back up. What the judge said was, this evidence was admissible for impeachment purposes on cross-examination. The judge made that determination in chambers six times during the discussion. So the judge admitted that this evidence could come in, it would come in on cross-examination. Cross-examination of the complaining witness, of the counselors, it was going to come in. So referencing it in the opening statement was not an error to begin with. So the high degree of necessity didn't exist to begin with. The court didn't even take that into consideration. But after the court makes the correct ruling that this evidence can come in for impeachment purposes, the state wants it in its case in chief. And that's what really happened in this case. The state didn't object when the reference was made. When they first come into the chambers, what the state does, it says, we wanted to discuss how this evidence could come back in. He complained that the defense opened the door so we should get to use the evidence. That's what the state really wanted. It was only until the trial court said, does anybody want a mistrial? The state didn't even jump on that. It says, absolutely, we need that. This was too prejudicial. We need a new trial. The state said, well, let us think about it. And then they come back and then they say, yes, we would like a mistrial. The reason for that was it was a strategic disadvantage. Strategic disadvantage is not manifest necessity. Well, it can be. It depends what it is. It depends what the error is. As I, perhaps sitting as a district judge reading this transcript, what appears to me is a situation where a judge made a pretrial ruling, defense counsel violated it, at least in the trial court's judgment, which we have to defer to at least on some level, and then was facing a situation where the jury had just heard this opening statement that was a very different opening statement than I think the government would have given if it had known that it could address this evidence in opening. And I think one factual that keeps appearing is that the state did not address this evidence because, in fact, in his opening statement, the prosecution did reference the interview. They said the interview after the incident was reported, he does reference that the interview does exist. So I think the fact that it's technically true, but besides the point, the state also, when we're arguing about a mistrial, right before the mistrial is declared, he said we saw this coming. So when he admits we saw this coming, this was going to be a problem. We didn't know how to deal with it. That is what the prosecution stated in the chamber's discussion. This was a lack of preparation issue. This wasn't an incurable necessity for this to be able to, that this evidence was never going to be coming in. They should have seen this. The state actually, the prosecution admits, we recognize it is relevant. I mean, he does testify, but he does state in the chambers, he said we understand this evidence is relevant. If it was relevant, the state court said six times it is going to be admissible for cross-examination. The state should have known that this was coming. But the judge issued multiple written orders that it was excluded, at least in certain circumstances, and it seems clear to me reading the record that the state understood that it should not be talking about what the victim said during those interviews. That's different than referring to the fact that an interview happened. And I think the orders that the state was precluded from using the evidence, it was very specific that the state was precluded from using those evidence. It never said anything about the defense. But I think regardless, even assuming that the state court's evidentiary rulings were correct, that's not the end of the inquiry. It's not about fault. And that's where the Supreme Court in this case made the mistake. The Supreme Court assigned fault. They said manifest necessity exists because defense counsel created it. That's not the scenario. That's not what Arizona v. Washington required. Arizona v. Washington requires sound discretion. And that sound discretion requires first determining whether or not it was truly necessary. And what truly necessary means there was not a less drastic means of proceeding with the trial. There could have been a curative instruction, as we've discussed. There could have been an opening or a supplemental opening. I mean, that would have been within the trial court's discretion to allow them to come back out. I mean, there's nothing that prohibits that in the rule. Whether or not a case has done that in the past, it could have been done. A short continuance, which is what Arizona, and I think the state relies so much on Arizona v. Washington in saying that sound discretion is required. But in this case, what differentiates this case from Arizona was in Arizona, there were truly prejudicial statements. The defense made a reference to that there was evidence that was hidden by the prosecution in the first case. Truly prejudicial, there was no way to unring that bell. The court in that case also deliberated over two days to make a determination before deciding whether or not to declare a mistrial. It allowed the counsel to go home, do research on the issue of mistrial, and let him come back and argue the point. And then he also considered alternatives. And that was not done in this case. The discussion prior to the mistrial was about what evidence was going to come in and how it was going to come in. Once the court prompted the state to move for the mistrial, there was no discussion at all. The defense counsel actually strenuously objected to the mistrial and said, I will stipulate that all the evidence comes in for all purposes in the state's case in chief, which is exactly what the state asked for at the beginning of this discussion. Let the evidence in. And the defense said, it is so important that this case proceed before this jury at this time. I will concede. I'll withdraw all of my motions. I'll let the evidence come in. That was the cure. The court did not consider that. From the defense perspective, but the government and the state and the court did not see that as sufficient. The harm was done. The state did see that as sufficiently because that's what they initially asked for. The state initially said, he opened the door. This evidence should come in. It was only after they were given the opportunity by the trial court to consider a mistrial, did they think it over and say, yes, we want to redo. We want to better prepare. After this, before the new trial, they filed seven motions in limine that they didn't file the first time. They were able to better prepare. And that's what the double jeopardy is designed to prevent. It is designed to prevent the state from getting a second chance when manifest necessity doesn't exist. Because it puts the defendant at a huge disadvantage. This was a case where the state was unprepared, admittedly unprepared because they said, we have thought about this for weeks and we didn't know how to address it. That right there, that argument that this was anything other than a strategic or a lack of preparation is out the window because they admit it. Could you address the AEDPA standard? I can. The requirement in that issue, in the AEDPA standard, is that it is an unreasonable application of federal law. And that's exactly what happened here. Federal law requires sound discretion. That was not done. There was no consideration of alternatives. The state court acted precipitously. It was within minutes of the trial court offering the mistrial to him declaring one. There was no discussion of alternatives. And I think one of the court cases recently that came out from the Supreme Court is Klein v. Martin, which I think is really telling and really important in this case. Right. It said we have to consider whether any fair-minded jurist would do what the trial court judge did here. I agree. And I don't think any fair-minded jurist would in this instance. Because what Klein said was the state applied the correct rule. It cited the right case law. And the district court or the federal court decided, no, you should have analyzed it a little differently. There should have been more nuance in your discussion. There should have been more back and forth. But the ultimate holding in Klein was that the state applied the right rule. And we need to defer to them when they're applying the right rule. We're not going to impose upon them on opinion writing standards. In this case, the West Virginia Supreme Court did not apply the right rule. They applied a fault-based rule. They said, I mean, the opinion, the entire opinion by the West Virginia Supreme Court is one paragraph. And what that paragraph says is, here, petitioner's right against double jeopardy was not violated because at his first trial, his counsel created a manifest necessity for the mistrial during his opening statement when he repeatedly referenced evidence that the trial court had clearly ruled inadmissible. That was it. That was the entire decision by the West Virginia Supreme Court. Well, but it was citing Keller, its earlier opinion, which was itself relying on Arizona. It was applying the Supreme Court's Arizona versus Washington standard. Well, they were applying Keller. But what they, I mean, when you read what they're citing to in Keller, it says, this is particularly true in cases where the, it says, the term manifest necessity covers a broad spectrum of situations in which some instances bear little relationship to the literal meaning of this phrase. This is particularly true in cases where the conduct of one party at trial has created sufficient jury prejudice toward the other that is unfair to continue with the trial. The mistrial is warranted. There was no discussion of what Arizona actually requires. Arizona actually requires consideration of alternatives. I mean, in the other cases of this court that actually show where sound discretion is, was applied, was in, you know, in a case like in Sloan, I think is a really good case where the Fourth Circuit held that sound discretion or manifest necessity requires a scrupulous exercise of judicial discretion that leads to the conclusion that the ends of public justice would not be served by continuation of the proceedings. And that sort of sound discretion did not happen here at the trial court. This isn't a second guessing of how the trial court or even of the West Virginia Supreme Court wrote their opinion. The fact is that they did not apply the right standard, the standard that manifest necessity exists and that, you know, they basically totally assigned fault in this case. How do you address the fact that the trial judge in ruling said, quote, I am forced. I have to declare a mistrial, which pains me. So that's what the trial court said. And then the West Virginia Supreme Court cited Keller, which was applying the Arizona standard. That sounds awful lot like applying the right legal standard. You may have disagreed with it, but then when we apply and then, because then you go to Sloan, but that was a direct appeal. So not only does it seem to me that the trial court understood that it had to be really necessary. And then the Supreme Court of West Virginia applied the Supreme Court standard. And then now we have to decide whether no fair minded jurist would agree. So the trial court in this instance, I think it's telling that it was not necessary because he's the one that prompted it. He made the correct ruling. This was an evidentiary issue. It was not a constitutional emergency. What happened was they they're talking about how the evidence is going to be introduced. And he say six times, he says it is admissible on cross examination. He finally comes to the conclusion that says, but defense counsel, if you use it on cross examination, you are going to open up the door and that evidence is going to come in in its entirety. And defense counsel says, fine, I agree. The very next going to get it introduced when he's going to need somebody to authenticate this interview record. And at that point, there's no discussion about the mistrial. We're talking about an evidentiary issue as to how the evidence is going to come in. The trial court says, do any parties wish to put forth a motion for a mistrial? He prompted it. That is not the exercise of sound discretion. He prompted the issue because he didn't have to. It was he didn't want to stick to his ruling as to how the evidence was going to come in because he continued to get pressed by the state so they could use it in this case in chief, which is actually what the defense counsel ultimately conceded. Go ahead, use it in your case in chief. This needs to be decided today. That was the issue. So I don't think that the trial court, he made the statement after he declared a mistrial because he was trying to cover for the lack of the sound discretion that was not done. He just at the end of it, he says, it pains me to do this. Yes, I need to. But that's not reflected in the actual discussion in the chambers. It wasn't necessary because what the state wanted was granted to them. Do you have something further? Let me ask you one. I'm sorry. One more question. Do you, what do we make from your perspective of the fact that the district judge did not apply the AEDPA layer of the analysis? You're asking us to affirm, but that analysis was not done. So are you suggesting that we should do that in the first instance and then reverse? The district court below, I do believe, applied the AEDPA standard. It stated exactly what was required to grant the 2254 writ. So I believe that the district court did apply the correct standard and cited the correct law and determined that manifest necessity did not exist in this case. So I do think the district court was correct in applying the correct standard and found that no reasonable jurist could have come to the conclusion that the trial court, in this case, the Supreme Court, would just rubber stamped it without any analysis at all. To get to that point, we have really got to buy into the fact that the trial court precipitously declared a mistrial. That's one element of the standard. I believe the failure to consider, and he did do that, but I think you also can show that the trial court did not consider alternatives. It did not give any consideration to the defense counsel or the defendant's right to have the impaneled jury make the determination. I mean, the defense counsel was strenuously arguing and conceded in all respects, let the evidence come in. We want this to be the jury. The chamber's discussions are in the record. They are, and it's pretty brief, and I think that kind of goes to, it's about 20 pages of transcript. It is not a very long discussion because it reinforces the fact that the trial court didn't put much effort into making this determination. It was looking for, it was faced with a difficult evidentiary decision, which I think is true, but that's not manifest necessity. I think that the court, at this point, decided that it was going to have to make a tough ruling and decided that it would be easier to declare a mistrial and address this at a later time when a continuance could have done that, which was a reasonable alternative in addition to the curative statement, in addition to allowing all the evidence to come in, which is what both of the actual parties agreed to. So I do believe that manifest necessity under Arizona v. Washington in the U.S. Supreme Court did not exist in this case, and I don't think there's anything in the record that supports that there was. Thank you for your arguments, Mr. Falkner. Mr. Frankovich, did I pronounce that correctly? Frankovich? Yes. Mr. Williams, you have three minutes. My name's a little bit easier. So I think we just started that discussion with a discussion of the framework, and I think it's important to go back again and think about the relevant apply the AEDPA standard here? I don't see that, Your Honor. And I think what the trial court did is, I think, felt that this was a mistaken decision and acted accordingly. And that is simply not the relevant standard when it comes to AEDPA. Then answer Judge Abramson's question on that, that was directed to the possibility they did not apply. What do we do if it wasn't applied? Well, I think Your Honors, of course, have to apply the AEDPA standard. That's the relevant standard that applies here. And I Do we send it back for the trial court to do it, or do we do it? I think because it's a question of law, it would be most appropriate for this court to address that issue. A remand is the minimum baseline for what this court needs to do in a case where the court doesn't apply the AEDPA standard. But I think given that it's a question of law, that's the straightforward issue for this court. I think in listening to Mr. Woods' counsel's argument, I think even today, we're still not seeing the degree of deference that this court has to engage with when it looks at this record. We see things like guessing at the reason why the trial court declared the mistrial, that he just didn't want to deal with the consequences of his own evidentiary decisions. Respectfully, that's not in this record. And the suggestion that, for instance, there was no discussion of alternatives. Again, respectfully, that's not in this record. There's an attempt to draw an arbitrary line between the first mention of the mistrial before and after. But all those alternatives were discussed before the mistrial was ever raised, and that still counts for purposes of Arizona v. Washington. I think there was a suggestion that the trial court itself thought all this evidence was admissible. I would just direct your honors to JA 111 to 112. Sir, you can't simply move to exclude evidence of the interview, which I'm absolutely certain should be excluded under Petrie. And then go ahead and start alluding to statements made in that interview. And then with regard to Ms. Aspenleiter, we have the same problem again, sir. This trial court was unequivocal about this was inadmissible evidence. And things can happen at trial that, yes, open the door to impeachment evidence. But that was a, at this point in time, a speculative possibility that, to be clear, still would not allow this evidence to be used as substantive evidence, which is the way in which this is being used in opening statements. You say that the alternatives were discussed in chambers? Yes, Your Honor. Could you tell me a couple of the alternatives he considered? Sure. Well, I think there was a discussion of a potential curative instruction, but the court thought the bell had been rung. It was too late for a curative instruction. There was a discussion of potentially just introducing all the evidence and allowing sort of a free for all when it came to all of that evidence. But again, there were reasons why both the state and initially at least defense counsel, until he saw what he had done, both didn't want that. So those were two that come immediately to mind. I think those were the two that were sort of most readily available under West Virginia law, this sort of supplemental opening statement. Again, I think it would be kind of a novel approach. But ultimately- But he could have done it. Once you get to a situation like that, trial judges got almost absolute discretion to level the trail. I've heard that before. I'm not sure that West Virginia law gives a state court trial judge that much discretion. And again, that's the kind of state law question that this court is not in a position to address in the first instance. All I know is, of course, what the law says, and I've never seen a case that endorses that sort of kind of ad hoc approach. Ultimately, I think what I heard from the district court judge and what I heard again today is frustration with the trial court judge and to some degree the Supreme Court appeals and the way in which the analysis was written or described. Cases like Harrington make it very clear that the length or the comprehensiveness or whatever of the analysis is not the relevant question. The only relevant question is whether they were inconsistent with clearly established Supreme Court precedent. And given that we have the manifest necessity standard applied here, the court simply cannot find that to be the case. Thank you, Mr. Williams. Thank you very much.
judges: James Andrew Wynn, Henry F. Floyd, Adam B. Abelson